UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **SUMMAIYA IQBAL**<br>1234 Lexington Ridge Drive<br>Lexington, MA 02421<br><br>    Plaintiff,<br><br>    v.<br><br>**U.S. CITIZENSHIP AND IMMIGRATION SERVICES**, 20 Massachusetts Ave, NW, Washington, DC 20529<br><br>**CONNIE NOLAN, ACTING ASSOCIATE DIRECTOR, USCIS SERVICE CENTER OPERATIONS DIRECTORATE**, 20 Massachusetts Ave, NW, Washington, DC 20529<br><br>    Defendants. | Civil No.: |

## PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff alleges as follows:

### JURISDICTION

1.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and the Mandamus Act, 28 U.S.C. § 1361.

### VENUE

2.  Venue in this district is proper under 28 U.S.C. § 1391(e)(1).

### PARTIES

3.  Plaintiff, Summaiya Iqbal, is a citizen of India and resident of Lexington, MA, working for her employer, St. Elizabeth's Medical Center in Boston, MA, and is a lawful H-4 nonimmigrant with a valid Employment Authorization Document ("EAD") which expired

on April 1, 2021.

4.     Defendant United States Citizenship and Immigration Services ("USCIS") is the agency within the Department of Homeland Security which is responsible for adjudicating H-4 extensions and H-4 EADs.

5.     Defendant Connie Nolan is sued in her official capacity as Acting Associate Director, USCIS Service Center Operations Directorate. Ms. Nolan's Service Center Operations Directorate provides services for persons seeking immigration benefits and provides decisions to individuals requesting immigration benefits at Service Centers, where each of Plaintiff's applications remain pending.

## STATUTORY AND REGULATORY BACKGROUND

6.     The Immigration and Nationality Act ("INA") authorizes the issuance of nonimmigrant visas and status to professional workers to fill positions in the U.S. in specialty occupations in the H-1B classification as well as their spouses and children, in the H-4 classification. 8 U.S.C. § 1101(a)(15)(H).

7.     H-1B and H-4 status is usually limited to 6 years. 8 U.S.C. § 1184(g)(4).

8.     Many H-1B workers are sponsored by their employers to become "Lawful Permanent Residents" ("LPRs" or "green card holders") in the employment based ("EB") categories. 8 U.S.C. § 1153(b)(1), (2), and (3) (commonly EB1, EB2, and EB3).

9.     The INA established an annual quota on the number of EB immigrants (including dependents) allowed to gain LPR status. 8 U.S.C. § 1151(d) (140,000). Within the annual quota limits there are further limits on the number of individuals born in any country who can be approved. 8 U.S.C. § 1152(a)(2) (7% cap). These "per-country limitations" result in decades long waits for LPR status for those of certain national origins, notably India.

10.    The INA was amended on October 17, 2000 by The American Competitiveness in the Twenty First Century Act of 2000, Pub. L. No. 106-313, 114 Stat. 1253, Title I, § 104(c) ("AC21 § 104(c)") which provides special protections for beneficiaries of petitions subject to per country limitations, in a conforming amendment that is now Note 5 to 8

U.S.C. § 1184, which permits the beneficiary of an immigrant petition (Form I-140) in the EB1, EB2, or EB3 classifications (8 U.S.C. § 1153(b)(1), (2), and (3)) to exceed the 6 year maximum in H-1B or H-4 status if the beneficiary is "eligible to be granted that status but for application of the per country limitations applicable to immigrants under those paragraphs" and permits indefinite 3 year extensions of H-1B and H-4 status "until the alien's application for adjustment of status has been processed and a decision made thereon."

11. A regulation promulgated in 2015 authorizes the issuance of an Employment Authorization Document ("EAD") for H-4 spouse dependents who are derivative beneficiaries of approved I-140 immigrant petitions and who are prevented from finalizing their Lawful Permanent Resident applications due to per-country limitations on the number of green card approvals in a Fiscal year. Employment Authorization for Certain H-4 Dependent Spouses, 80 Fed. Reg. 10,284 (Feb. 25, 2015) (codified at 8 C.F.R. §§ 214.2, 274a) ("H-4 EAD Rule").

12. The H-4 EAD Rule was enacted to "ameliorate certain disincentives that currently lead H-1B nonimmigrants to abandon efforts to remain in the United States while seeking [lawful permanent resident] status, thereby minimizing disruptions to U.S. businesses employing such workers." *Save Jobs USA v. U.S. Dept. Homeland Security*, 942 F.3d 504, 507 (2019), quoting 80 Fed. Reg. 10,284, 10,285.

## FACTS

13. Plaintiff is a lawful nonimmigrant national of India in H-4 status, having initially entered the U.S. in L-2 status on June 7, 2012 and subsequently obtaining a change of status to H-4 on October 1, 2012. Plaintiff was granted H-4 status valid through April 1, 2021 and has a pending H-4 extension since December 10, 2020. Plaintiff's spouse is employed by RBC Capital Markets LLC pursuant to valid H-1B nonimmigrant status.

14. Plaintiff is no recent entrant to the country, and has been residing in the United States in L-2 / H-4 status for nearly 9 years, since June 2012. She is an intending prospective immigrant with a U.S. residence of long duration, whose spouse has an I-140 immigrant petition filed and approved on his behalf with a "priority date," or place in line, from

February 17, 2015.

15. Despite having waited in line over 6 years already to become eligible for LPR status, it will still be a number of years until she is able to file for that status due to the per-country limitations. As of April 2021, only those with priority dates before May 1, 2010 may obtain approval.

16. Plaintiff applied for and received an EAD authorizing her to work, pursuant to the H-4 EAD Rule. Her most recent EAD was valid from November 5, 2020 to April 1, 2021.

17. On December 10, 2020, Plaintiff filed to renew her status and H-4 EAD. Plaintiff filed a Form I-539 with fee to extend her H-4 status along with her spouse's H-1B status extension request, pursuant to the special provisions of AC21 § 104(c), and was issued a Receipt Notice bearing the case number LIN2106850486. Concurrently with that application, Plaintiff filed a Form I-765 with fee to extend her EAD for a period to match her H-4 status extension and her spouse's H-1B extension, and was issued a Receipt Notice bearing the case number LIN2106850499.

18. On December 21, 2020, Defendant USCIS approved the H-1B petition extension filed by RBC Capital Markets LLC on behalf of Plaintiff's spouse (under Receipt Number LIN2106850483) and extended his H-1B status for 3 more years through April 1, 2024.

19. On January 21, 2021, Plaintiff's counsel submitted a request to Defendant USCIS on Plaintiff's behalf, to expedite the issuance of her H-4 extension and EAD on the grounds of urgent humanitarian reasons and compelling U.S. government interests, explaining that she is employed as a medical resident at St. Elizabeth's Medical Center, treating COVID-19 patients in the ICU.

20. As Plaintiff serves as a medical resident, her continued services are crucial not only to her employer, but also to the patients being treated at the medical center and the overall wellbeing of the United States.

21. Plaintiff's employer, St. Elizabeth's Medical Center, operates within the

Healthcare / Public Health sector, and thus, is covered by the Department of Homeland Security's Essential Critical Infrastructure Worker's list issued by its Cybersecurity & Infrastructure Security Agency, as most recently updated on December 16, 2020.

22. On January 21, 2021, USCIS denied the H-4 extension expedite request, and also denied the request for expedited issuance of the EAD on the grounds that Plaintiff's biometrics needed to be taken.

23. On January 25, 2021, Plaintiff's counsel submitted a request to Defendant USCIS on Plaintiff's behalf, to expedite the scheduling of a biometrics appointment.

24. On February 1, 2021, Defendant USCIS approved the request for an expedited biometrics appointment.

25. On February 8, 2021, Plaintiff received the biometrics appointment notice sent by Defendant USCIS, indicating that the appointment had been scheduled for March 1, 2021 at 12:00 PM.

26. On February 9, 2021, Plaintiff's counsel contacted Defendant USCIS to request an earlier biometrics appointment date given the critical nature of Plaintiff's work and EAD expiration date of April 1, 2021.

27. On February 16, 2021, Defendant USCIS contacted Plaintiff's counsel to clarify that an earlier biometrics appointment could not be scheduled. Defendant USCIS recommended appearing at the Application Support Center ("ASC") prior to the scheduled appointment, with a request for biometrics processing as a "walk-in" due to the urgency of the matter.

28. On February 16, 2021, Plaintiff appeared at the ASC as a walk-in to submit her biometrics, however, security personnel declined to admit her.

29. On March 1, 2021, Plaintiff appeared at the ASC pursuant to her scheduled appointment and submitted her biometrics.

30. On March 1, 2021, Plaintiff's counsel submitted a new request to Defendant USCIS to request expedited issuance of her EAD.

31. On March 2, 2021, Defendant USCIS denied the request on the grounds that Plaintiff's biometrics needed to be taken.

32. On March 3, 2021, Plaintiff's counsel contacted Defendant USCIS again to request expedited issuance of her EAD due to improper denial of the prior request. Defendant USCIS stated that a subsequent request could not be submitted as the initial request had been filed less than 5 days ago. Upon addressing the urgency of the request, the USCIS representative indicated that the matter would be escalated to a Tier 2 supervisor and placed in the urgent queue. Defendant USCIS indicated that the Tier 2 supervisor would contact Plaintiff's counsel via phone within 72 hours.

33. On March 8, 2021, Plaintiff's counsel contacted Defendant USCIS to inquire into the status of the Tier 2 supervisor call. The USCIS representative indicated that the Tier 2 supervisor would be returning our call by the end of the day.

34. On March 9, 2021, Plaintiff's counsel contacted Defendant USCIS to inquire into the status of the overdue call from the Tier 2 supervisor. The USCIS representative indicated that the request from March 3, 2021 had not been placed in the urgent queue. The USCIS representative then connected Plaintiff's counsel to a USCIS customer service supervisor. The supervisor put a note on the request from March 3, 2021 explaining the issue, providing an overview of the expedite requests that had been attempted, and requesting a call from a Tier 2 supervisor that day. The customer service supervisor subsequently entered a new request for a call from a Tier 2 supervisor, which was placed in the urgent queue, and noted that the call would take place within 72 hours.

35. On March 10, 2021, the Tier 2 supervisor from Defendant USCIS contacted Plaintiff's counsel. A new request was placed to expedite the issuance of Plaintiff's EAD. Plaintiff's counsel explained that she qualified for the expedite request on the grounds of urgent humanitarian reasons and compelling U.S. government interests, as she is employed as a medical resident at St. Elizabeth's Medical Center, treating COVID-19 patients in the ICU.

36. On March 12, 2021, Defendant USCIS denied the request for expedited

processing of Plaintiff's EAD application. The request was denied on the grounds that the explanation provided to the Tier 2 supervisor did not provide enough information to qualify for expedited processing.

37. Plaintiff timely filed her H-4 and EAD extensions nearly 4 months prior to its expiration.

38. Plaintiff has already lost work authorization on April 1, 2021 despite repeated attempts spanning from January through March 2021 to expedite the EAD application.

39. Plaintiff has relied upon the H-4 EAD Rule to obtain an EAD, secure employment and seek extensions of her EAD, and has engaged in critical work for her employer, who also relies on her to complete this critical work.

40. Due to the loss of work authorization, Plaintiff has been required to stop work at St. Elizabeth's Medical Center as of April 1, 2021. Plaintiff has been completing a medical residency in Anesthesiology since June 2018, and has been providing critical care to COVID-19 patients in the ICU and as part of the airway team for intubations and ventilator management. This abrupt halt to Plaintiff's work permission has negatively impacted St. Elizabeth's Medical Center's ability to efficiently and fully care for their COVID-19 patients, and thus, has substantial humanitarian and U.S. government interests. Anesthesiologists are involved in critical aspects of patient care, including resuscitation and ICU services. The Anesthesiology team at St. Elizabeth's Medical Center's is comprised of only 30 residents, at various levels of training. The absence of a resident under normal circumstances creates a burden on all other team members, and is exponentially more damaging during the COVID-19 pandemic.

41. The delay in renewing Plaintiff's timely filed EAD renewal has caused disruption of her work for a medical facility involved in providing critical medical care in the middle of the COVID-19 pandemic, as well as significant emotional hardship to Plaintiff, who was approximately 2.5 months away from completing her medical residency. Plaintiff was supposed to graduate from her residency program in July 2021, however, this date is now

uncertain due to the gap in her employment. The American Board of Anesthesiology (ABA) and American Board of Medical specialties govern the maximum number of days that a resident can be absent from work. Currently, the ABA grants **only 20 days per year** including sick days and vacation. Any interruption in training beyond 20 days results in an extension, and sometimes, removal from training. This, in turn, may result in an individual's inability to obtain board certification. This is a severe consequence as medical doctors are required to obtain board certification for credentialing and hospital employment. The lack of board certification affects medical licensure by the states, without which, one cannot legally practice medicine.

42.     Additionally, residency spots at St. Elizabeth's Medical Center are federally funded, thus, any interruption in resident training not only causes hardship to the resident, but is also not in the best interest of the U.S. government.

43.     Plaintiff has secured an offer of employment with Steward Holy Family Hospital, Inc. Although Plaintiff is contracted to begin her employment on July 31, 2021, this is now in jeopardy due to the lapse in her employment authorization and the uncertainty of her graduation date.

## CLAIMS FOR RELIEF

### Administrative Procedure Act

44.     The Administrative Procedure Act, 5 U.S.C. § 555(b) and 706(1), provides the Court with authority to compel agency action when unreasonably delayed.

45.     Defendants have unreasonably delayed adjudication of Plaintiff's application, considering that Plaintiff's application was filed solely as a renewal (not an initial application) and Defendants' regulations required Plaintiff to wait until the 6 month window before expiration, and not before, to file for extension of her status and work permission, and because Plaintiff applied early in the application window nearly 4 months before expiration, and because Plaintiff has lost her work authorization as of April 1, 2021 due to Defendant's refusal to expedite adjudication.

46.	It is unreasonable for Plaintiff to abruptly stop her work for her employer who is on the Department of Homeland Security's Essential Critical Infrastructure Worker list, in the middle of a pandemic.

<u>Mandamus Act</u>

47.	The Mandamus Act, 28 U.S.C. § 1361, provides the Court with the authority to compel an officer or employee of any agency of the United States to perform a duty owed to Plaintiff.

48.	Plaintiff has a clear right to the relief requested. Plaintiff's spouse's H-1B petition has already been extended until April 1, 2024, and she is eligible for an extension of H-4 status as his dependent until April 1, 2024, and under the H-4 EAD Rule she is eligible for extension of her EAD for a period to match her H-4 extension through April 1, 2024.

49.	Defendant has a clear duty to perform the act in question – to adjudicate the H-4 extension and EAD renewal in a reasonable time under the circumstances.

50.	The circumstances include the fact that Plaintiff was required to wait to file for renewal of her status and EAD until the 6-month window before the expiration of her status and the EAD, and she filed for renewal early in the 6 month period, nearly 4 months in advance.

51.	Unlike an initial application, which can be filed at any time, the agency's regulations required Plaintiff to wait until the 6 month window prior to expiration before filing her extension, and then even when she did so early in the application window, the agency has continued to delay the renewal application causing her to lose her job for an Essential Critical Infrastructure Worker organization during an unprecedented health crisis due to the coronavirus.

52.	Under the circumstances it is unreasonable for Defendants to further delay issuance of her extension requests when the agency has already granted her spouse's petition and where her status and work authorization have already expired on April 1, 2021.

53.	No other adequate remedy is available. Plaintiff's counsel has already

submitted numerous requests to the agency for an expedite of her application, setting out facts for consideration under the circumstances, and Defendant agency has denied those requests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Assume jurisdiction over this action;
2. Compel Defendants to adjudicate Plaintiff's I-539 and I-765 applications as soon as possible, and no later than April 27, 2021; and
3. Award such further relief as the Court deems necessary or proper.

Respectfully submitted,

April 26, 2021

Eleanor Pelta
Attorney for Plaintiff

_____

Eleanor Pelta
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004
Phone: (202) 739-5050
Email: eleanor.pelta@morganlewis.com